UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(West Palm Beach Division)

Case No.

DIANA FEDDERMAN,

      Plaintiff,

vs.

PALM BEACH COUNTY SCHOOL
DISTRICT, a Florida political
subdivision, and MICHAEL J.
BURKE, individually,

      Defendants.

_____/

## Complaint for Damages and Injunctive Relief

### Count I:

### Diana Fedderman's Claim Under 42 U.S.C. § 1983 for Violation of her First Amendment Right to Free Speech Against School District and Superintendent Burke in His Individual Capacity

Plaintiff, Diana Fedderman, sues defendants, Palm Beach County School District, and Michael J. Burke, in his individual capacity, and alleges:

### Introduction and Summary

1.    This is an action by Diana Fedderman, a career educator (27 years) in the Palm Beach County School District who in her private life is unabashedly vocal about her progressive political views — including on line. Superintendent Michael J. Burke, a Republican, demoted her from Assistant

Superintendent in the Division of Teaching and Learning to a do-nothing assignment in a job that had not been staffed for years, the COVID-19-related grant funding for which would expire one year before she would be eligible for full retirement. He did so after she, **First**, tweeted on her private Twitter account that "Republicans are decimating public education.  It's time to Act.  Vote local[,]" and, **Second**, suggested in writing to her supervisor that the school administration could not legally (as the superintendent was demanding) unilaterally eliminate from a sex-education curriculum for high-school seniors a teaching tool that had been approved by the School Board — a position with which a school-district lawyer agreed in an e-mail to Ms. Fedderman's supervisor.  Ms. Fedderman sues the school district and Mr. Burke under 42 U.S.C. § 1983 and the First Amendment concerning the Twitter post; she sues the school district pursuant to § 112.3187, FLA. STAT., the Florida "Whistle-blowers Act," concerning her objection to violating state law concerning editing sex-education curricula approved by school boards. As to her ¶ 1983 action, Ms. Fedderman seeks damages from both the school district and Mr. Burke individually and punitive damages against Mr. Burke; injunctive relief, attorney's fees and litigation expenses.

### Jurisdiction and Venue

2.     These claims arise under the free-speech clause of the First Amendment to the United States Constitution, as extended to the states by the Fourteenth Amendment, and 42 U.S.C. § 1983 (the "Ku Klux Klan Act"). This Court has jurisdiction pursuant to 28 U.S.C. § 1331.  This Court has

supplemental jurisdiction over Ms. Fedderman's claim under the Whistle-blower's Act because that claim arises out of the same demotion and is therefore so related to claims over which the Court has federal-question jurisdiction that it forms part of the same case or controversy under Article III of the United States Constitution.

3. The claims being sued upon arose in Palm Beach County, Florida, where the defendants at all material times did business.

**Parties**

4. Diana Fedderman was at all times material, and still is, a Palm Beach County School District employee.

5. Defendant Palm Beach County School District is, and at all times material was:

      a. a Florida political subdivision operating toward Ms. Fedderman under color of state law, and

      b. an "agency" as defined by § 112.2187(3)(a), FLA. STAT.

6. Defendant Michael J. Burke has since October 20, 2021 been the School District's Superintendent of Schools and, as to the acts alleged in Count I, has acted towards Ms. Fedderman under color of state law.

**General Allegations**

7. Ms. Fedderman posted her "Republicans-are-decimating-public-education" tweet on her private Twitter account at 6:57 a.m. one morning in early January 2022 — a time of day that was noted by Sean Fahey, Esquire, a first-amendment lawyer in the School District's legal office:  Mr.

Fahey was pointing out in an e-mail to a group of persons (including Superintendent Burke) that Ms. Fedderman was clearly off-duty at the time and that her tweet was constitutionally protected political speech.

8.     Superintendent Burke told Ms. Fedderman he learned about the post while he, Jay Boggess (his chief of staff), and Alexandra Ayala (a School Board member) were in Tallahassee for Palm Beach County Days (January 11 and 12).

9.     Superintendent Burke telephoned Ms. Fedderman early in the evening of January 14, leaving a message that he wanted her to call him.

10.     When she did so — with the phone on speaker so that her husband could hear it — Superintendent Burke told her that:

a.     Her Twitter post had been the topic of conversation amongst several legislators;

b.     One of those legislators, Mike Caruso, a Republican state representative from Delray Beach, told Superintendent Burke that he had seen Ms. Fedderman's tweet, which she attached to a <u>Washington Post</u> article she was re-posting about how Democrats had not been pushing back against Republican policies;

c.     Representative Caruso, Superintendent Burke told Ms. Fedderman, had also told him that he was going to take Ms. Fedderman's post to Governor Ron DeSantis;

d.     While Superintendent Burke acknowledged during the phone call that he could not order Ms. Fedderman to take the tweet down,

and said that he was not asking her to do so,  he mentioned that people

reading her tweets were conflating her public and private personas, and

     e.    Informed her "[t]his is not the first time your Twitter

account has come to my attention."

11.    When Ms. Fedderman — not ordered to do so, but intimidated

by the after-hours phone call — took the tweet down during the phone call,

and told Superintendent Burke that she had done so, he thanked her.

12.    Immediately following the end of the 2021-2022 academic year,

Mr. Burke summoned Ms. Fedderman to his office June 6 — the first time he

had ever done so — and informed her that he was dissolving her assistant-

superintendent's position and making her a middle-school principal:

     a.    Ms. Fedderman told Superintendent Burke that,

notwithstanding that an assignment as a middle-school principal would be a

major demotion, she did not have the credentials that the Florida

Department of Education requires for an middle-school principal, but

     b.    Mr. Burke said that her lack of credentials  did not matter.

13.    Ms. Fedderman was next informed the following day by Erica

Reiger, the Chief of Human Resources, that Mr. Burke had decided, instead

of demoting her to a middle-school principal's job (which state law would

not have permitted because of her lack of credentials), to create a

"Director-of-Equity" position that would:

     a.    be a demotion, and

b.      be funded for two years — one year short of Ms.

Fedderman's retirement eligibility — with a COVID-19-related grant from

the Elementary and Secondary School Emergency Relief ("ESSER") Fund.

14.    The next thing Ms. Fedderman knew was that a transfer of her

to Director of Supplemental Education Services — a grant-funded position

that had not been staffed for approximately a decade and had no duties

assigned to it — was on the School Board agenda for approval.

15.    Although Ms. Fedderman and a lawyer whom she had engaged

spoke against the demotion at the school-board meeting at which the

proposed reorganization (a number of promotions, but no other demotions)

was presented, the School Board voted 6-1 June 18 to approve the package.

16.    Shortly after Ms. Fedderman's demotion, the School District

began advertising for a "Director of Secondary Education," the duties of

which position include some of Ms. Fedderman's previous responsibilities.

17.    As a direct, natural and proximate result of defendants, the

Palm Beach County School District and its superintendent, Michael J.

Burke's actions toward Ms. Fedderman, Ms. Fedderman has suffered

damages, including but not limited to:

a.      diminishment of earning capacity and

b.      emotional distress and mental anguish.

18.    Superintendent Burke exhibited wilful disregard of Ms.

Fedderman's clearly established First-Amendment right to free speech,

entitling her to recover punitive damages against him in his individual capacity.

19.     If not enjoined by this Court (both preliminarily and permanently) to cease their burdening of Ms. Fedderman's constitutional right to free speech, the School District and  Superintendent Burke would continue to punish Ms. Fedderman for having engaged in protected speech — i.e., criticizing Republicans for "decimating public education" and urging her readers to "vote local."

20.     Plaintiff is entitled, pursuant to 42 U.S.C. § 1988, to recover her costs and litigation expenses, including a reasonable attorney's fee, for bringing this action.

WHEREFORE, Plaintiff, Diana Fedderman, prays that this Court will grant judgment for her, and against the defendants, Palm Beach County School District and Michael J. Burke, it superintendent of schools, in his individual capacity:

**One**, determining that the School District and  Superintendent Burke violated Ms. Fedderman's rights to Free Speech by demoting as a result of her "Republicans-are-decimating-public-education" tweet her assistant superintendent to a do-nothing, previously unstaffed job that does not have guaranteed funding to permit her to reach full retirement;

**Two**, enjoining the City and Superintendent Burke, both preliminarily and permanently, to cease burdening Ms. Fedderman's first-amendment

rights by, <u>inter alia</u>, restoring her to her assistant superintendent's position, or to a permanent, budgeted position similar to that;

**Three**, awarding compensatory damages against the School District and Superintendent Burke, jointly and severally;

**Four**, awarding punitive damages against Superintendent Burke in his individual capacity;

**Five**, awarding costs, including attorneys' fees and litigation expenses, against the School District and Superintendent Burke, jointly and severally, and

**Six**, granting such other and further relief as is just.

## Count II:

### Diana Fedderman's Florida Whistle-blower's Act Claim

21.    Plaintiff realleges and incorporates the allegations of paragraphs 1-6 and 12-16 above as if they were fully set forth in Count II.

22.    Ms. Fedderman's supervisor, Glenda Sheffield, Ed.D., the Chief Academic Officer, e-mailed Ms. Fedderman at 8:14 a.m. May 4, 2022 to instruct her that Superintendent Burke wanted Ms. Fedderman to remove immediately from the sex-education course for high-school seniors a teaching-tool poster called "Genderbread v3.3," <u>i.e.</u>:



23.    Ms. Fedderman responded to Ms. Sheffield:

A soon as Pete or Cheryl come in, we'll remove it.  I will let you know when its done.  I recognize this is a request from the superintendent.  I am concerned that the Board approved this curriculum, and now we are changing it without the Board's knowledge nor vote.  However, I will do as instructed.

24.    Ms. Fedderman's concern was that because the School Board

had already approved the use of the Genderbread teaching tool, school

administrators' unilaterally scrapping it would violate § 1003.42(b), FLA. STAT., which provides in pertinent part that "[a]ll instructional materials. . . used to teach reproductive health or any disease, including HIV/AIDS, its symptoms, development, and treatment, . . . must be annually approved by a district school board in an open, noticed public meeting."

25.    At Ms. Fedderman's urging, Ms. Sheffield sought an opinion from Bruce Harris, Esquire, one of the School District's lawyers.

26.    Although Mr. Harris advised Ms. Sheffield by e-mail that the administration should go back to the School Board before making any change, and Ms. Sheffield so advised Superintendent Burke, Superintendent Burke ordered her to remove "Genderbread" anyway.

27.    Ms. Fedderman complied with Superintendent Burke's order.

28.    Nonetheless, a month and two days later, Superintendent Burke summoned Ms. Fedderman into his office to tell her that he was abolishing her position as an assistant superintendent.

29.    As a direct, natural and proximate result of defendants' actions toward Ms. Fedderman, Ms. Fedderman has suffered damages, including but not limited to:

      a.    diminishment of earning capacity and

      b.    emotional distress and mental anguish.

30.    If not enjoined by this Court to cease its deprivation of Ms. Fedderman's rights under § 112.3187, the Palm Beach County School

District would continue to retaliate against Ms. Fedderman for engaging in behavior protected before the Whistle-blower's Act.

31.    Plaintiff is entitled, pursuant to § 112.3187(9)(d), to recover her costs and litigation expenses, including a reasonable attorney's fee, for bringing this action.

WHEREFORE, Plaintiff, Diana Fedderman, prays that this Court will grant judgment for her, and against defendant, Palm Beach County School District:

**One**, determining that the School District violated Ms. Fedderman's rights under the Whistle-blower's Act;

**Two**, enjoining the City, both preliminarily and permanently, to cease discriminating against Ms. Fedderman by reinstating her as an assistant superintendent, or to some similar position;

**Three**, awarding compensatory damages against the Palm Beach County School District;

**Fourth**,  awarding costs, including attorneys' fees and litigation expenses, against the Palm Beach County School District, and

**Five**, granting such other and further relief as is just.

Respectfully Submitted,

THE AMLONG FIRM
500 Northeast Fourth Street
Suite 101
Fort Lauderdale, Florida 33301-1154
(954) 462-1983

*/s/ William R. Amlong*
WILLIAM R. AMLONG
Florida Bar No. 470288
WRAmlong@TheAmlongFirm.com
KAREN COOLMAN AMLONG
Florida Bar No. 275565
KAmlong@TheAmlongFirm.com

***Attorneys for the Plaintiff,***
***Diana Fedderman***

Dated:  November 29, 2022

\\amlong3\cpshare\CPWin\HISTORY\211019_0001\17F7.164