UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(West Palm Beach Division)

Case No. 9:22-cv-81857-DMM

DIANA FEDDERMAN,

    Plaintiff,

vs.

PALM BEACH COUNTY SCHOOL DISTRICT, a Florida political subdivision, and MICHAEL J. BURKE, individually,

    Defendants.
_____/

### Plaintiff's Reply in Support of her
### Motion for Preliminary and Permanent Injunctive Relief

Plaintiff, Diana Fedderman replies as follows to Defendant's (sic) Response in Opposition to Plaintiff's Motion for Preliminary and Permanent Injunctive Relief, With Incorporated Memorandum of Law (ECF 11):

### Introduction and Summary

Defendants, Palm Beach County School District and Michael Burke, its superintendent, argue that this Court should not restore Ms. Fedderman to her position as an Assistant Superintendent of Teaching and Learning, from which she was demoted as soon as the 2021-2022 academic year ended because she in January posted on her Twitter account, off-duty, that

> Republicans are waging a war to decimate public ed. Where is the response? They are banning books, advocating for a two-sides approach to teaching slavery, & generally making teaching untenable. Without opposition, they win. This is the time for a grassroots approach- vote local.

ECF 11-1 (sic).

As to the standard for a preliminary injunction, the defendants' response — and its attachments — make clear that:

- Ms. Fedderman is likely to prevail on the merits since the attachments and defendants' argument make it clear that Ms. Fedderman's demotion was based on the content of her January tweet — and possibly her subsequent tweets;

- Irreparable injury not only will be suffered, but is being suffered daily as she is consigned to a do-nothing job outside her area of expertise;

- There is no likelihood of damage to the School District or the superintendent since none of the tweets that defendants have appended as ECF 11-5 identify her as an assistant superintendent — and she remains a school-district employee, and

- An injunction restoring Ms. Fedderman to her job would be in the public interest, not adverse to it, since the school district is now paying Ms. Fedderman the same salary ($167,800 — plus a 4 per cent raise that the School Board just approved) but is getting essentially nothing for it.

Defendants argue that first-amendment lawsuit and its request for a preliminary injunction restoring her to her assistant-superintendent, *One*, is moot; *Two*, is not likely to be successful; *Three*, does not involve any

irreparable injury, and, *Four*, does not reasonably anticipate any threatened injury.

Ms. Fedderman addresses those claims in the order that Defendants made them.

**Point 1:     Ms. Fedderman's complaint, and her claim for preliminary injunctive relief, is not moot.**

As held in Reich v. Occupational Safety and Health Review Commission, 102 F.3d 1200 (11th Cir. 1997), one of the authorities cited by defendants, for the proposition that "injunctive relief. . . addresses only ongoing or future violations. . .," id. at 1202, "[a] case becomes moot 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'"  Id. at 120, quoting Powell v. McCormack, 395 U.S. 486, 496 (1969).

Adverse employment actions based on temporarily or preliminarily enjoyed constitutionally protected behavior may be preliminarily enjoined. See, e.g., Branti v. Finkel, 445 U.S. 507, 508 (1980) (newly elected Democratic public defender's plan to discharge two assistants because they were Republicans); Elrod v. Burns, 427 U.S. 347 (1976) (affirming court of appeals reversal of district court's denial of a preliminarily injunction against Chicago Democrats from discharging non-Democrat public employees); Johnson v. Bergland, 586 F.2d 993, 994 (4th Cir. 1978), cited by Cate v. Oldham, 707 F.2d 1176 (11th Cir. 1983), (reversing denial of preliminary injunction reinstating Republic State Director of federal Farmers Home

Administration in North Carolina, whom incoming Democratic administration had move to a same-salary lesser job).

The harm from which Ms. Fedderman seeks immediate relief is not done and over:  It continues every day she goes to work and does virtually nothing for which she was educated and trained.  This motion, therefore, is not to enjoin the School District from inflicting additional harm for her (although that obviously is another purpose of this litigation); it is rather to make them stop the harm they currently are inflicting on her every day.

Her case is anything but moot.

**Point 2**:    **Ms. Fedderman is likely to succeed on the merits.**

The School District and its superintendent are offering no legitimate, non-retaliatory reason for moving Ms. Fedderman into the non-job of Director of Supplemental Educational Services.

The only reason they offer for not moving her back into her position as Assistant Superintendent for Learning and Teaching, for which no one has suggested she was not qualified, is that "[t]he School Board ultimately eliminated all Assistant Superintendent positions as of October 12, 2022 [and t]herefore, the School Board is unable to reinstate Plaintiff to a position that no longer exists."

That statement in the defendants' response is literally (but not really) true:  Previously, there were three assistant superintendents, i.e., Ms. Fedderman, who was transferred out of that position in June; Carlene Millen, the Assistant Superintendent for Professional Development, who voluntarily

left and has not been replaced, and Adam Miller, the Assistant Superintendent for Performance Accountability — whose title was changed to Chief of Performance Accountability, but whose job description and duties remain the same.

As for the authorities upon which defendants rely for their argument against restoring Ms. Fedderman to Assistant Superintendent (or Chief) of Teaching and Learning, all are inapposite:

- <u>FHR TB, LLC v. TB Isle Resort, LP</u>, 865 F.Supp.2d (S.D. Fla. 2011) was a business dispute in which a hotel-management company and its parent wanted the court to sidestep an arbitration agreement and — "perhaps most importantly," even though no irreparable harm had been demonstrated — enjoin a hotel owner to reinstate the management company to continue running a 322-room luxury hotel for the remainder of what was essentially a 50-year hotel management agreement. <u>Id</u>. at 1176-1177. Although the magistrate judge distinguished between a mandatory and prohibitory injunction, he did not hold that a mandatory injunction could not be ordered. He did, however, say that the management company would not be "likely to prevail" because both Florida and New York law forbid the use of specific performance of injunctions to enforce personal services contracts. <u>Id</u>. at 1178.

**Point 3:** Ms. Fedderman is likely to succeed on the merits.

Ms. Fedderman's January Twitter post — about how Republicans are decimating public education, banning books and blocking the teaching of

critical race theory, and how persons who oppose that need to organize at the grass-roots level and vote — is, without doubt, concerning matters of public concern.  The School District even agrees.  See ECF 11,at 6 ("The School Board agrees that the Plaintiff's speech was on a matter of public concern. . . .")

So are the additional twitter posts defendants appended to their response.  See ECF 11-5.

And while her Twitter account may in the past have identified her as an assistant superintendent, that ceased following the January conversation in which Mr. Burke warned that persons who read her tweets were conflating her personal and public roles.  See ECF 11-5 (Twitter posts with no identification of Ms. Fedderman as a School District employee.)

So Mr. Burke's no-explanation transfer of Ms. Fedderman, and the School Board's current explanation that the Assistant Superintendent's jobs have been eliminated is evidence that her post was a "substantial motivating factor" in her transfer.  A lack of candor can also be inferred from defendants now claiming that the three assistant superintendent's position had been eliminated — rather than simply vacated in Ms. Millen's case and renamed in the case of now-Chief Miller.

Although defendants refer twice during this section of their response to "intervening events," See ECF 11, at 7 and 8, they do not say what they were.  Are they talking about the additional Twitter posts appended as ECF

11-5? If so, that would be additional violations of the First Amendment since all of those also are discussions of matters of public concern.

Meanwhile, the case law on which defendants rely is also inapposite:

- In quoting <u>Brochu v. City of Riviera Beach</u>, 304 F.3d 1144, 1161 (11th Cir. 2002), for example, defendants omit the sentence following the one it quoted, showing that Lt. Brochu was not fired for expressing political ideas, but rather for essentially planning a police-department <u>coup détat</u>: "Brochu overstepped the boundary of constitutional protection when he secretly created a written plan aimed at overthrowing [Chief] Poreba's administration and installing himself and his friends. No reasonable jury could find otherwise on this record."

- <u>Shahar v. Bowers</u>, 114 F.3d 1097, 1103 (11th Cir. 1997) was a case holding that an attorney general could discharge an assistant for being in a same-sex marriage because her intimate association with him lessened her protection, noting that

    > government employees who have access to their employer's confidences or who act as spokespersons for their employers, as well as those employees with some policy-making role, are in a special class of employees and might seldom prevail under the First Amendment in keeping their jobs when they conflict with their employers.

<u>Id</u>. at 1103. There is no evidence, however, that Ms. Fedderman, as an assistant superintendent, enjoyed that type of role with Mr. Burke.

- <u>Sims v. Metropolitan Dade County</u>, 972 F.2d 1230, 1232 (11th Cir. 1992) involved a Black pastor who was fired from his position in the

Dade County Department of Community Affairs after complaining publicly about the Metro-Dade police department's racial policies, calling the mayor of Miami "an idiot" (both at a meeting and later on a radio show) for linking Nelson Mandela to Fidel Castro and, finally urging his parishioners during a post-Mandela boycott:

> We are now entering the second phase of the boycott known as "Rediscovering Black Miami." You should not spend your money with any business that does not hire Blacks or who have [sic] not shown any sensitivity toward us in the past and you should support Black businesses or those who have a history of hiring Blacks. Sometimes we are made to feel like foreigners in our own homeland because of the way Spanish is spoken in many of our public facilities and businesses, such as restaurants, that we frequent.

- <u>Kinsey v. Salado Independent School Dist.</u>, 950 F.2d 988, 990 (5th Cir. 1992) (en banc)(affirming summary judgment on a due-process claim and a judgment notwithstanding the verdict on a first-amendment claim by "a public school superintendent, Dr. Nolan L. Kinsey, who opposed through speech and affiliation the winning slate in a school board election and was relieved of his duties (but with full compensation) by the new Board."

**Point 4:**   **Ms. Fedderman is suffering irreparable harm.**

As cogently set out in <u>Cate v. Oldham</u>, 707 F.2d 1176, 1188 (11th Cir. 1983)

> "It is well settled that the loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction." Deerfield Medical Center v. City of Deerfield Beach, 661 F.2d 328, 338 (5th Cir. Unit B 1981), citing <u>Elrod v. Burns</u>, 427 U.S. at 373.  So too, direct penalization, as opposed to incidental inhibition, of First Amendment rights constitutes irreparable injury. <u>Johnson v. Bergland</u>, 586 F.2d 993, 995 (4th Cir. 1978)

(transfer of employee allegedly for exercise of First Amendment rights; "[v]iolations of first amendment rights constitute per se irreparable injury"); Citizens for a Better Environment v. City of Park Ridge, 567 F.2d 689 (7th Cir. 1975).

The two Eleventh Circuit cases that defendants cite for Ms. Fedderman to have sought a preliminary injunction sooner than she did were not first-amendment cases. One, All Care Nursing Serv. v. Bethesda Memorial, 887 F.2d 1535, 1536 (11th Cir. 1989), arose under §§ 1 and 2 of the Sherman Act, 15 U.S.C. § 1-2, and § 542.18 and 542.19 FLA. STAT. (1989). The other, Wreal, LLC v. Amazon.com, Inc., 840 F.3d 1244 (11th Cir. 2016), involved a reverse-confusion trademark dispute concerning the mark "FyreTV."

**Point 5:     Granting the injunction would be in the interest of the School District.**

The School District is now paying Ms. Fedderman the salary of a district executive, i.e., an "Assistant Superintendent" or "Chief" of Teaching and Learning while she is performing tasks more akin to those of an office assistant. The School District, and the taxpayers of both Palm Beach County and Florida, would be better served if she were allowed to do the work that she was trained to do and did well enough for 22 years to achieve the rank she held prior to her demotion.

## Conclusion

Based on the facts alleged, the authorities cited and the arguments presented, both in this response and in her original motion, plaintiff, Diana Fedderman, respectfully requests that this Court to:

*One*, set an evidentiary hearing on her request for a preliminary injunction;

*Two*, enter a preliminary injunction, restoring Ms. Fedderman to her job as "Assistant Superintendent for Teaching and Learning," or as it likely would now be known, as "Chief of Teaching and Learning," and

*Three*, enjoin defendants, and their agents, to cease any restrictions on her exercise of her first-amendment rights or retaliatory behavior towards

*Four*, not only "if issued, the injunction would not be adverse to the public interest," but it would be strongly in the public interest to restore to her assistant superintendent's position a woman as educated and as experienced as Ms. Fedderman.

Ms. Fedderman — based on the facts marshaled, the authorities cited and the arguments presented — respectfully requests this Court to grant a preliminary injunction restoring Ms. Fedderman to her position as an Assistant Superintendent in the Division of Teaching and Learning.

Respectfully Submitted,

THE AMLONG FIRM
500 Northeast Fourth Street
Suite 101
Fort Lauderdale, Florida 33301-1154
(954) 462-1983

*/s/ William R. Amlong*
WILLIAM R. AMLONG
Florida Bar No. 470288
WRAmlong@TheAmlongFirm.com
KAREN COOLMAN AMLONG
Florida Bar No. 275565
KAmlong@TheAmlongFirm.com

Dated:  December 21, 2022

***Attorneys for the Plaintiff,
Diana Fedderman***

## Certificate of Service

I HEREBY CERTIFY that the above and foregoing has been filed by using the ECF program of the United States District Court for the Southern District of Florida and thereby served upon all counsel of record.

*/s/ William R. Amlong*
WILLIAM R. AMLONG

\\amlong3\cpshare\CPWin\HISTORY\211019_0001\17F7.164